FILED
MAY 12 2016

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EMERY HEINE, JR. and CHERYL HEINE, | CIV 15-4061 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| SHELBY R. PINKELMAN and BRIAN KRAMER, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Before the Court is Defendant Brian Kramer's (Kramer), a resident of Nebraska, motion for summary judgment. The motion is opposed only by Plaintiffs Emery Heine, Jr. and Cheryl Heine (Plaintiffs), who are residents of South Dakota. Defendant Shelby R. Pinkelman (Pinkelman), a resident of Wyoming, did not file a response to Kramer's motion. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiffs' lawsuit is a negligence claim against Kramer and Pinkelman. The facts giving rise to the action occurred on June 1, 2012 at the four-way intersection of Highway 57, Highway 84, and County Road 882. The intersection is south of Harington, Cedar County, Nebraska. Plaintiffs and Defendants were deposed, as well as Plaintiffs' two witnesses, Thomas J. Becker (Becker) and Karma J. Schulte (Schulte).

Highway 57 is a two-lane highway running north and south. Traffic travelling north or south on Highway 57 has the right-of-way at the intersection in issue. That is to say, traffic is not controlled by stop lights, stop signs, or otherwise.

Highway 84 is also a two-lane highway and runs west from the point at which it intersects with Highway 57. Thus, Highway 84 begins and ends at the intersection with Highway

1

57. Traffic travelling east on Highway 84 is controlled by a stop sign at the intersection with Highway 57.

County Road 882 is a gravel road that runs east from the point it intersects with Highway 57. Like Highway 84, County Road 882 begins and ends at its intersection with Highway 57. Westbound traffic on County Road 882 is controlled by a stop sign at the intersection with Highway 57.

Highway 84 and County Road 882 are offset from one another. Thus, a vehicle travelling west on County Road 882 would be forced to turn right and travel north on Highway 57 for a short period of time before being able to turn left and continue west on Highway 84. The opposite is true for traffic travelling east on Highway 84. The speed limit on all three roads is 40 miles per hour. It is undisputed that no obstructions impeded the vision of any of the drivers at the intersection. The intersection itself is positioned on a hill. The roads slope in a downward decline in all four directions from the point of the intersection.

At the time of the accident, Pinkelman was travelling west on County Road 882 and intended to continue west on Highway 84. Kramer, on the other hand, was travelling east on Highway 84 and intended to make a left-hand turn in order to travel north on Highway 57. Plaintiffs were travelling south on Highway 57, and Becker and Schulte were travelling north on Highway 57.

It is undisputed that Kramer had come to a stop on Highway 84 at the intersection with Highway 57. It is disputed, however, whether Pinkelman also stopped on County Road 882. Kramer and Pinkelman herself testified at deposition that Pinkelman did stop at the intersection with Highway 57. Becker and Schulte testified at deposition that Pinkelman did not stop. According to Kramer, as he came to a stop at the intersection, Pinkelman was already stopped opposite him on County Road 882. Noticing that Pinkelman had arrived at the intersection first, and, in addition, that she intended either to turn right and proceed north on Highway 57 or turn left and continue west on Highway 84, Kramer believed that Pinkelman had the right-of-way. As such, Kramer motioned Pinkelman by waving his hand, intending to yield to her the right-of-way. According to Kramer, he looked north and south before waving and saw no oncoming traffic. Pinkelman's testimony is largely consistent with Kramer's. In her deposition, Pinkelman

2

stated that after seeing Kramer wave she briefly assessed traffic for herself and continued into the intersection. Shortly thereafter, she was struck by Plaintiffs' vehicle.

Becker and Schulte testified at their depositions that Becker was driving his vehicle north on Highway 57 with Schulte in the passenger seat. As they were travelling north on Highway 57, they observed Pinkelman approaching the intersection on County Road 882. As they approached the intersection, Schulte thought Pinkelman was going to collide with the passenger's side of Becker's vehicle. Schulte then exclaimed that Pinkelman was not going to stop and, as a result, Becker applied the brakes in order to avoid an accident. Becker and Schulte then observed Pinkelman travel into the intersection without stopping at the stop sign on County Road 882 and colliding with Plaintiffs as their vehicle was travelling south on Highway 57. According to an accident reconstructionist, Pinkelman had been travelling at 22 to 26 miles per hour at the time of the accident.

On March 23, 2015, Plaintiffs filed negligence claims against both Pinkelman and Kramer. In the complaint, it is alleged that Pinkelman was negligent when she failed to yield to Plaintiffs' at the intersection, which caused the accident. The complaint also alleges that Kramer was negligent by waving to Pinkelman in order to indicate that she could enter the intersection, which, as a result, caused Pinkelman to collide with Plaintiffs. Kramer and Pinkelman filed crossclaims against one another for indemnity and contribution on April 20, 2015 and May 5, 2015, respectively. Docs. 5, 8. In each of the crossclaims, both Defendants allege that the other was more at fault in causing the accident. In Defendants' respective answers to the crossclaims, Docs. 12, 13, both Kramer and Pinkelman allege that the other failed to state a claim and generally denied the allegations contained in the other's crossclaim. Neither Kramer nor Pinkelman formally moved to dismiss the other's crossclaim.

Kramer moved for summary judgment against Plaintiffs on February 15, 2016. Kramer argues summary judgment is properly granted in his favor as no dispute as to any genuine issue of material fact regarding the proximate cause element of Plaintiffs' negligence claim against Kramer exists. Specifically, Kramer argues that Plaintiffs have failed to show that Pinkelman relied on Kramer's wave to the extent necessary for an actionable negligence claim. Pinkelman did not file a response to Kramer's motion for summary judgment.

3

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1)(A)-(B). "The movant can also establish the absence of a disputed material fact by showing 'that an adverse party cannot produce admissible evidence to support the fact.'" *Jensen v. Hy-Vee Corp.*, No. CIV. 09-4057-KES, 2011 WL 1832997, at *1 (D.S.D. May 13, 2011) (quoting Fed.R.Civ.P 56(c)(1)(B)). "The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the party seeking summary judgment has met this initial burden, the burden then shifts to the non-moving party who must demonstrate "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P 56(c)(1)(A)-(B). "For purposes of summary judgment, the facts, and inferences drawn from those facts, are 'viewed in the light most favorable to the party opposing the motion.'" *Jensen*, 2011 WL 1832997, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## DISCUSSION

The Court is asked to rule on whether Plaintiffs have demonstrated a *prima facie* case of what the Court will refer to as "negligent signaling" against Kramer. The jurisdictions that have considered the issue are split on whether such a cause of action exists. The majority view is that a driver that signals to another may be held liable in some circumstances. "Liability rests on the view that sometimes a signal may be interpreted as an indication that the way is clear and it is safe to proceed." *Pell v. Tidwell*, 139 So.3d 165, 168 (Ala. Civ. App. 2013), *cert denied*. For purposes of Kramer's motion for summary judgment, the Court is asked to assume that Nebraska, the State of controlling law, recognizes the negligent signaling cause of action.

> Like other negligence actions, the essential elements of an actionable claim of negligence in a "waving driver" case are: (1) the existence of a duty of care; (2) the defendant's breach of that duty; (3) the breach was the proximate cause of the plaintiff's harm; and (4) the plaintiff suffered actual damages.

*Boucher v. Grant*, 74 F. Supp. 2d 444, 449 (D.N.J. 1999). Here, the Court is also asked to assume that Plaintiffs have satisfied the duty and breach requirements of the *prima facie* case and, instead, focus on proximate cause. "'Proximate cause is ordinarily a question of fact . . . Establishment of the causal relationship between a defendant's actions or failure to act and a plaintiff's injuries requires a showing that the action or omission must have been a substantial factor in producing those injuries.'" *Powers v. Torres*, No. CV040833380, 2006 WL 329863, at *4 (Conn. Super. Ct. Jan. 26, 2006) (unpublished opinion). Most important to the decision in this case, "[i]n 'waved driver' cases, an [] element of proximate cause involves whether or not the [non-signaling] driver actually relied on the gesture of the signaling driver." *Grant*, 74 F. Supp. 2d at 452. *See Terrell v. Central Washington Asphalt, Inc.*, No. 2:11-cv-00142-APG-VCF, 2016 WL 950906, at *2 (D. Nev. March 7, 2016) ("In those jurisdictions that adopt the majority rule, the signal is not a proximate cause of the injured party's damages unless the signaled person 'actually relied' on it.") (citation omitted); *Tidwell*, 139 So.3d at 169 (quoting *Isaacs v. Larkin Elec. Co.*, No. 16948, 1998 WL 906394, at *4 (Ohio Ct. App. Sep. 4, 1998) (unreported case)) (on the issue of whether a signaler may be held liable for negligence, the court noted, "'It is also necessary, under the majority view [in negligent signaling cases], that the [non-signaling] driver actually relied on the signal as an 'all-clear' message.'"); *Torres*, 2006 WL 329863, at *4 (quoting Annot., 14 A.L.R. 5th 193, 202 (2005)) ("In the body of case law dealing with motorists' liability for signaling another vehicle or pedestrian to proceed, '[m]ost courts have held that, for [proximate cause] to be established, there must be reliance by the signaled driver or pedestrian to proceed, thus, where courts have found that there was no such reliance, they have upheld summary judgments or verdicts against the plaintiff's bringing the action.'") (alterations in original).

The issue of reliance often turns on the interpretation of the signal given. Of the various courts that have ruled on the issue,

> [m]any of the cases address the issue of whether summary judgment is appropriate by endeavoring to decide whether the signal, under the circumstances, is properly characterized as (1) a mere yielding of the right of way, a sort of "you

5

go first and I will not hit you" characterization; or (2) an indication that the way is "all clear," a sort of "it is safe to proceed to your destination" characterization. Speaking in general terms, the cases indicate that a driver giving a "you go first" signal is much less likely, if at all, to be held liable for negligence than is a driver giving an "all clear" signal.

*Martinez ex rel. Chavez v. Martinez*, No. E2000-01990-COA-R3-CV, 2001 WL 256152, at *2 (Tenn. Ct. App. 2001). Thus, "'a driver's negligence in giving such a signal is not presented where the signal could not reasonably have been interpreted as a signal to proceed across lanes of oncoming traffic.'" *Id.* at *4 (quoting *Nolde Bros., Inc. v. Wray*, 266 S.E.2d 882, 884 (Va. 1980)). Some courts have devised factors pertinent to how a signal should be interpreted, which include

> (1) the conduct of the parties, *see Kerfoot* [*v. Waychoff*], 501 So.2d [588,] 589 [(Fla. 1987)]; (2) the timing between the giving of the signal and the movement of the signaled individual, *see, e.g., Cofield* [*v. Nuckles*], 387 S.E.2d [493,] 498 [(Va. 1990)]; (3) the presence or absence of extraordinary circumstances such as unusual obstacles or obstructions, *see Peka* [*v. Boose*], 431 N.W.2d [399,] 401 [(Mich. Ct. App. 1988)]; (4) whether the signaled individual is a child of tender age, *see Sweet* [*v. Ringwelski*], 106 N.W.2d [742,] 745 [(Mich. 1961)]; *Bell* [*v. Giamarco*], 553 N.E.2d [694,] 697 [(Ohio Ct. App. 1988)]; and (5) the type of signal given, *see Askew* [*By Askew v. Zeller*], 521 A.2d [459,] 462 [(Pa. 1987)].

*Id.* Two additional factors most heavily considered by courts in determining the liability of a signaling driver include "the positioning of the vehicles and the drivers' respective abilities to discern whether the way is all clear." *Id.* (citations omitted).

Here, the only ones who witnessed Kramer's wave were Kramer himself and Pinkelman. Neither Plaintiffs nor Plaintiffs' witnesses saw Kramer's wave. According to both Kramer and Pinkelman, the wave was meant to convey and was interpreted, respectively, that Pinkelman had the right-of-way, not that her path was clear of traffic. Deposition of Brian Kramer, Doc. 23-5, at 3; Deposition of Shelby Pinkelman, Doc. 23-1, at 4. That testimony is uncontroverted. Pinkelman also insists that she came to a complete stop upon reaching the intersection and that "[t]here was quite a few cars coming from the south[,]" the direction Becker and Schulte were travelling from. Pinkelman Deposition at 3. In addition, Pinkelman stated that Kramer waved at her "about 30 seconds" prior to Pinkelman deciding it was safe to proceed. *Id.* at 4. Pinkelman claims that she did not see cars approaching from the north, the direction Plaintiffs were travelling from. *Id.* To the north, the direction Plaintiffs were coming from, Pinkelman claims

she could see clearly "[u]ntil the hill went down[, which] was probably about a hundred yards or less." *Id.* During the duration of time that Pinkelman was stopped, she claims that she "look[ed] back and forth [about five times] while [she] was waiting for traffic to allow [her] through." *Id.*

Kramer's deposition testimony is largely consistent with Pinkelman's. According to Kramer, as he approached the intersection, Pinkelman had already come to a stop across from him. Kramer Deposition at 3. When Kramer came to a stop at the intersection, he "motioned [Pinkelman] to give her the right-of-way." *Id.* Kramer believed that because Pinkelman was angled as if she intended to go north (make a right-hand turn) or continue east (continue across all lanes of Highway 57) she had the right-of-way. *Id.* at 4. Kramer further stated that, at the intersection, his view to the north was no better than Pinkelman's as the upward incline of the roads "leveled off" at the intersection. *Id.* In addition, there were no obstructions blocking the view northward. *Id.* According to Kramer's deposition, after Kramer motioned to Pinkelman only a short time elapsed–one to five seconds–before Pinkelman made her way across Highway 57 and was struck by Plaintiffs. *Id.* at 6.

The testimony of Becker and Schulte conflicts with the testimony of Kramer and Pinkelman principally on the issue of whether or not Pinkelman stopped at the intersection. According to both Becker and Schulte, Pinkelman did not stop and, instead, proceeded directly through the intersection until she collided with Plaintiffs. Deposition of Thomas J. Becker, Doc. 23-2, at 5; Deposition of Karma J. Schulte, Doc. 23-4, at 3. Becker and Schulte stated that there were no obstructions that would have made it difficult to see the vehicles involved; vehicles could be seen coming from the north and south. Becker Deposition at 5; Schulte Deposition at 5. According to their own deposition testimony, neither Becker nor Schulte saw Kramer wave at Pinkelman. Becker Deposition at 4; Schulte Deposition at 7.

Based on the conflicting testimony about whether or not Pinkelman stopped at the intersection, Plaintiffs argue that summary judgment is inappropriate. According to Plaintiffs, genuine issues of material fact exist as to the credibility of the witnesses that should be left for a jury. The Court does not agree. "It is the function of the court to determine the questions of causation in cases in which a jury could not reasonably differ." *Askew*, 521 A.2d at 463. The instant case presents such a situation. According to Pinkelman's own testimony, she assessed for herself the flow of traffic when deciding to continue east across Highway 57; she looked to the

7

north and south several times in order to ensure safe passage. While the testimony of Becker and Schulte controverts Pinkelman's statements that she stopped at the intersection, nothing in the deposition testimony of Becker, Schulte, or Plaintiffs or other evidence in the record controverts Pinkelman's assertion that she did not rely on Kramer's wave. Pinkelman herself explicitly disclaimed any reliance on Kramer's wave beyond giving her the right-of-way. "[W]hen a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against h[er] in the absence of any explanation or modification, or of a showing of mistake or improvidence." *Gamet v. Jenks*, 197 N.W.2d 160, 164 (Mich. Ct. App. 1972) (quoting *Southern Rendering Co. v. Standard Rendering Co.*, 112 F. Supp. 103, 108 (E.D. Ark. 1953)). In addition, given that all parties agree that Pinkelman's direction was regulated by a stop sign and no obstructions existed blocking Pinkelman's view to the north, no reasonable juror could conclude that Pinkelman relied on Kramer's wave beyond giving her the right-of-way.

Whether or not Pinkelman actually stopped at the stop sign has no genuine connection to her reliance on Kramer's wave because Pinkelman had a nondelegable duty to stop at the stop sign, yielding the right-of-way to traffic travelling north and south. *See Woods v. O'Neil*, 767 N.E.2d 1119, 1124 (Mass. App. Ct. 2002) (noting that courts in other jurisdictions have upheld summary judgment or directed verdict when it was determined "that the person signaled had a nondelegable duty to look for oncoming traffic."); *Dawson v. Griffin*, 816 P.2d 374, 379 (Kan. 1991) ("What we do know is this: [the defendant] had a nondelegable duty to yield to oncoming traffic while making a left turn; and the only reasonable and safe thing to assume from a hand wave is, '*I* won't hit you.'") (emphasis in original). To reiterate, none of the deposition testimony indicates that any obstruction existed that would have impeded Pinkelman from assessing the flow of traffic for herself. Thus, even when viewing the facts most favorably to Plaintiffs, no genuine issue of material fact remains as to whether Pinkelman relied on Kramer's wave. Taking Kramer's and Pinkelman's testimony together with the two heavily considered factors discussed above–the vehicles' positions and the drivers' abilities to view oncoming traffic, *Martinez, supra*–the only reasonable conclusion that a jury could come to is that Pinkelman did not rely on Kramer's wave beyond Pinkelman being given the right-of-way. Under the majority view recognizing a cause of action for negligent signaling, signaling to another driver merely that she has the right-of-way does not provide actionable grounds for a negligence claim. *See Askew*, 521

A.2d at 462 (holding that it is normally for a jury to decide if a wave is something more than merely yielding the right-of-way. "Of course, where the facts are clear and, based on the facts, no inference of negligence may reasonably be drawn, the judge may rule as a matter of law that the signaler is not liable."); *Kerfoot v. Waychoff*, 501 So.2d 588, 589 (Fla. 1987) ("We do not accept petitioner's contention that the trend is to impose liability on the signaling driver. We read the cases to mean that whether liability is determined as a matter of law is an issue resolved case by case, based on unrefuted facts of the vehicles' positions, the parties' conduct, and a reasonable interpretation of the signal under the circumstances.").

Faced with similar facts as the instant case, the court in *Askew By Askew v. Zeller* noted, "The focus of our inquiry is [] whether the court was correct in finding as a matter of law that legal causation was not present. Where relevant facts are not in dispute and the remoteness of the causal connection between the negligence of the original actor and the injury is so clear, the issue becomes one of law." 521 A.2d 459, 463 (Pa. 1987) (citing *Clevenstein v. Rizzuto*, 266 A.2d 623 (Pa. 1970)). In *Askew*, a vehicle collision occurred at a T-shaped intersection. Defendant Ulla Olsson was stopped at the intersection in a line of traffic travelling west. Defendant Darrell J. Zeller, opposite Olsson on the same street, was travelling east and waiting at the intersection to make a left-hand turn. The intersection was clear and, noticing that Zeller had turned on his left turn signal, Olsson motioned to Zeller by waving her hand from left to right. Olsson did not look to her right or her rear before waving Zeller on. Zeller, however, had a clear view of traffic coming from Olsson's right. Plaintiff Richard Askew was, like Olsson, travelling west. Askew was in the lane to the right of Olsson and intended to travel straight through the intersection. As Zeller made his left-hand turn, Askew struck the side of Zeller's vehicle. Olsson's vehicle was not involved in the accident.

Affirming the trial court's grant of summary judgment in favor of Olsson, the Superior Court of Pennsylvania noted, "Although the Askews have asserted the existence of a dispute regarding Zeller's interpretation of Olsson's signal, nothing in the record supports their assertion. Zeller's own statements remain uncontradicted." *Id.* During his deposition, Zeller had "clearly and unequivocally stated that he interpreted Olsson's signal only to mean [Olsson] would remain stopped and he could proceed in front of her." *Id.* The *Askew* court rejected the idea that Zeller negligently making his left-hand turn reasonably permitted an inference that Zeller must have

9

also relied on Olsson's signal to mean that the intersection was clear of traffic. The *Askew* court determined, "Even if we were to conclude, which we do not, that Olsson's act of signaling was negligent, her act was not in the legally responsible chain of events that caused the accident that injured Askew. Therefore, the trial judge was correct in awarding summary judgment in her favor." *Id.*

Here, the only people who saw Kramer's wave were Kramer himself and Pinkelman. As discussed, both Kramer and Pinkelman stated in deposition testimony that the wave was meant to indicate that Pinkelman had the right-of-way. The wave was not meant to, and was not taken to mean, that the way was clear for Pinkelman to continue eastward across Highway 57. No testimony cited to by Plaintiffs controvert Pinkelman's claim of non-reliance. As such, "[t]he uncontradicted deposition testimony of a co-defendant, who is an adverse party and equally liable to the plaintiff, is a sound basis for summary judgment." *Id.* at 464 (citing *Reading Co. v. United States Fidelity and Guaranty Co.*, 64 Pa. D. & C.2d 476 (Pa. Ct. Com. Pl. 1973), *aff'd per curiam* 311 A.2d 335 (Pa. Super. Ct. 1973)).

Finally, this Court understands that the courts of Nebraska have not ruled on whether Nebraska follows the majority or minority rule in "negligent signaling" cases. In this case, however, what rule Nebraska follows would not affect the outcome. Under the minority rule, "no duty exists for a signaling motorist to exercise caution and prevent accidents. This view rests on the premise that a signal to cross can be interpreted as no more than a yielding of the right of way." *Tidwell*, 139 So.3d at 168. Under the majority rule, while a signaling motorist may be held liable for negligence, reliance by the non-signaling driver on the signaling driver's wave must be shown in order to satisfy the element of proximate cause of a negligence claim. *Id.* at 169. Thus, here, Kramer could not be held liable for negligence at all under the minority view and, as the Court finds to be missing here, Kramer can only be held liable under the majority view upon a showing that Pinkelman relied on Kramer's wave. There is no evidence to support such a showing. All of the evidence is to the contrary. Therefore, under either the majority or minority rule, Kramer cannot be held liable for "negligent signaling." Kramer's motion for summary judgment will be granted.

## CONCLUSION

In order to survive a motion for summary judgment in a negligence case, once the burden has shifted to the nonmovant, she must demonstrate that a *prima facie* case of negligence exists and there are genuine issues of material fact that must be presented to a jury. In the case at bar, in order to satisfy the proximate cause requirement of the *prima facie* case, Plaintiffs are required to show that Defendant Pinkelman relied on Defendant Kramer's wave beyond a mere yielding of the right-of-way. Plaintiffs have failed to do so. Based on the uncontradicted testimony of Kramer and Pinkelman, Pinkelman did not so rely on Kramer's wave and there exists no genuine issue of material fact to be presented to the jury.

Because Pinkelman did not oppose Kramer's motion for summary judgment, the Court will assume Pinkelman has no objection to Kramer's absence from this case. Since the Court finds as a matter of law that Kramer cannot be held liable for negligence, the claim for indemnity and contribution, Doc. 8, against Kramer by Pinkelman is dismissed, as well as Kramer's crossclaim, Doc. 5, against Pinkelman. Accordingly,

IT IS ORDERED that (1) Defendant Brian Kramer's motion for summary judgment, Doc. 18, against Plaintiffs Emery Heine, Jr. and Cheryl Heine is granted; (2) Defendant Shelby Pinkelman's crossclaim, Doc. 8, against Defendant Brian Kramer is dismissed; and (3) Defendant Brian Kramer's crossclaim, Doc. 5, against Shelby Pinkelman is dismissed.

Dated this 12th day of May, 2016.

BY THE COURT:

*Lawrence Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk of Courts
By_____, Deputy
(SEAL)

11